IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| STEVE and DEANNE STALNAKER,<br><br>                        Plaintiffs,<br><br>vs.<br><br>5FOLD COLLECTIVE, INC., a/k/a FIVE FOLD COLLECTIVE, LLC, and JENNIFER LEONARD,<br><br>                        Defendants. | CV-22-04-BU-BMM<br><br>**ORDER ON**<br>**MOTION FOR PARTIAL**<br>**SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiffs Steve and Deanne Stalnaker (collectively "Stalnakers") have moved for partial summary judgment on Count 1, Breach of Contract. (Doc. 12.) Defendants 5Fold Collective, Inc., and Jennifer Leonard (collectively "5Fold") oppose this motion. (Doc. 16.) The Court conducted a hearing on May 19, 2022. (Doc. 30.)

## FACTUAL AND LEGAL BACKGROUND

Stalnakers own and operate the Inn on the Gallatin ("the Inn"), which offers boutique lodging, camping, and dining on the banks of the Gallatin River. (Doc. 13 at 2.) Stalnakers listed the Inn for sale in in August 2021, after deciding they were

ready to retire. (*Id.*) Stalnakers allege that they were particularly concerned with completing any sale quickly so that the standing reservations for the 2022 summer tourist season would be able to make a smooth transition. (*Id.*)

5Fold Collective, Inc. offered to purchase the Inn in October of 2021 for $4,995,000. (*Id.* at 3.) Defendant Jennifer Leonard signed the Buy-Sell Agreement on behalf of the buyer. (*Id.*) The "Purchase Price and Terms" of the Buy-Sell included the following terms:

- $50,000 in earnest money, to be credited to the buyer at closing;
- $2,000,000 in "additional cash down payment at closing";
- $2,495,000 in seller financing, with the following terms:
- 5% simple interest amortized over 10 years, with a 3-year balloon payment and the balance due in full on March 1, 2025;
- Monthly principal and interest payments of $11,000 due on the first of each month, beginning March 1, 2022; and
- $500,000, which "shall be obtained by Buyer through other acceptable third-party financing due at closing." (*Id.* at 3.)

The Buy-Sell further provided that the buyer would provide a "proof of funds" to the sellers within 7 days of execution, and also would deliver a "preapproval letter from a financial institution." (*Id.*) The parties set December 31, 2021, as the closing date, and the buyer's financing contingency ran until the closing date. (*Id.*) The Buy-Sell also provided that the "Buyer's attorney [will] prepare MT Trust Indenture and long-term escrow agreement at buyer's cost." (*Id.*) Stalnakers had "seven days to review and approve all financing documents" after receiving them. (Doc. 17 at 4.)

Disputes regarding "proof of funds" arose almost immediately. Stalnakers believed 5Fold's initial proof-of-funds statement, which was dated several months before the Buy-Sell agreement, proved insufficient and requested an updated proof-of-funds statement. (*Id.* at 4–5.) 5Fold provided two follow-up proof-of-funds statements—one on November 23, 2021, and one on December 7, 2021—the sufficiency of which remains in dispute. (*Id.* at 5–6.)

Stalnakers sent 5Fold a formal Demand to Perform Letter on December 16, 2021, noting that 5Fold had not yet produced any of the financing documents required by the Buy-Sell. (*Id.* at 6.) Another issue arose with regard to lien priority when 5Fold produced the financing documents. (Doc. 25 at 3.) The Buy-Sell remained silent on this matter. (*Id.*)

Stalnakers informed 5Fold on or around October 22, 2021, that, in the absence of any specific lien priority provision in the Buy-Sell, the Stalnakers considered themselves "to be first lien holder." (Doc. 25 at 4.) The Demand to Perform Letter rejected a recent demand from 5Fold that would have required Stalnakers to subordinate their seller financing to third-party financers "up to" $2,000,000. (Doc. 13 at 5.) The Demand to Perform Letter informed 5Fold that, unless it produced all relevant documents by December 23, 2021, Stalnakers would consider the Buy-Sell terminated. (*Id.*)

5Fold finally produced financing documents on December 23, 2021. (Doc. 17 at 7.) The financing documents included a draft subordination agreement and another supplemental proof-of-funds statement. (*Id.*) 5Fold's documentation also informed Stalnakers that 5Fold would be unlikely to finance the Inn purchase by the close date due to Stalnakers' refusal to subordinate. (Doc. 13 at 6–7.)

Stalnakers sent 5Fold a Notice of Termination on December 28, 2021. (*Id.* at 7.) Stalnakers later disregarded this Notice of Termination and came to an agreement with 5Fold on December 30, 2021, by agreeing to subordinate their financing up to $500,000. (Doc. 16 at 6.) Stalnakers did not consent specifically, however, to delaying the closing date. (*Id.*) 5Fold failed to tender funds the next day—the closing date—citing its inability to accomplish the third-party financing because the banks were closed for the holiday. (*Id.*) Stalnakers brought this suit on January 27, 2022, against 5Fold for Breach of Contract and Tortious Interference with Business and Contractual Relations. (Doc. 1.)

## LEGAL STANDARDS

The Court shall grant summary judgment if the movant shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).

4

A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## DISCUSSION

A material breach of contract occurs, under Montana law, when a party fails to perform an act so fundamental to the contract that the failure defeats the essential purpose of the contract. *Davidson v. Barstad*, 435 P.3d 640, 646 (Mont. 2019). Stalnakers allege that 5Fold materially breached the Buy-Sell Agreement in three discrete ways. (Doc. 13 at 9.) First, 5Fold anticipatorily breached the Buy-Sell Agreement by expressly stating that it was going to be unable to have the required funds to close by December 31, 2021, and then actually breached it by failing to show up at closing with the required funds. (*Id.*) Second, 5Fold anticipatorily breached the Buy-Sell Agreement by demanding that Stalnakers subordinate their seller financing up to $2,000,000 in third-party financing. (*Id.*) Third, 5Fold breached the Buy-Sell by failing to provide verifiable proof-of-funds statements that would establish that 5Fold could meet its financial obligations to Stalnakers. (*Id.*)

**I. Whether 5Fold breached the Buy-Sell Agreement by failing to tender funds on December 31, 2021.**

5Fold agreed in the Buy-Sell Agreement to pay $2,000,000 at closing on December 31, 2021. (Doc. 14-2 at 1.) The Buy-Sell Agreement further provides that "the Closing Date may be extended without amendment by not more than 0

days to accommodate delays attributable solely to such third party financing." (*Id.* at 2). This provision originally left the number of days blank. (Doc. 25 at 5.) 5Fold filled in the "0" when drafting the contract. (*Id.*)

Stalnakers argue that 5Fold breached the Buy-Sell Agreement twice through its inability to pay. (Doc. 13 at 9.) Stalnakers allege that 5Fold first anticipatorily breached the contract on December 23, 2021, by informing Stalnakers via letter that it would be "unlikely" to be able to tender payment by December 31, 2021, due to Stalnakers' refusal to subordinate their seller financing. (Doc. 13 at 10.) Stalnakers next allege that 5Fold breached by actually failing to tender funds on the agreed upon closing date—December 31, 2021. (*Id.*) The Court will address each argument in turn.

### a. Whether 5Fold's December 23, 2021, letter constituted an anticipatory breach of contract.

An anticipatory repudiation of contract by the promisor constitutes a repudiation of the promisor's contractual duty before the time fixed in the contract for the promisor's performance has arrived. *STC, Inc. v. City of Billings*, 543 P.2d 374, 377 (Mont. 1996). A party anticipatorily breaches an executory contract by repudiating the party's contractual duty before the party's obligation to perform. *Eschenbacher v. Anderson*, 34 P.3d 87, 93 (Mont. 2001). To support an action for anticipatory breach, a party's repudiation must be entire, absolute and unequivocal. *Id.*

6

5Fold argues that its December 23, 2021, letter did not constitute anticipatory repudiation. 5Fold based its statements regarding its inability to pay upon Stalnakers' refusal to subordinate their seller financing. (Doc. 16 at 12.) The Buy-Sell Agreement did not address specifically the issue of the priority of financing. (*Id.*) 5Fold asserts that, because its concerns revolved around the negotiation of an additional term, it never repudiated performance of the original contract. (*Id.*) 5Fold also argues that any negotiations or communication concerning lien interest priority before December 30, 2021, when Stalnakers agreed to subordinate a portion of their seller financing, "provide context but are largely irrelevant." (*Id.*)

5Fold's December 23, 2021, letter fails to repudiate the contract in a manner sufficiently unequivocal to constitute an anticipatory breach. The letter revolved around a proposed additional term regarding lien priority, but that in and of itself does not prevent it from constituting a repudiation of the original contract. A demand for performance of a term not contained in the parties' contract, accompanied by an unequivocal statement that the demanding party will not perform unless the additional term is met, constitutes an anticipatory breach of the contract. *Chamberlin v. Puckett Const.*, 277 Mont. 198, 203, 921 P.2d 1237, 1240 (1996).

The statements 5Fold made in their December 23, 2021, correspondence express potential difficulties in securing third party financing. The letter does not include a clear intent to repudiate the contract. 5Fold's indicated that it was "unlikely" to be able to pull together financing and suggested alternative closing dates. (Doc. 17-3.) 5Fold never expressed an intent not to perform. (*Id.*) 5Fold's December 23, 2021 correspondence reflects its continual interest in the Inn, and its intent to conduct a "successful closing with everyone happy." (*Id.* at 3.)

The context of the December 23, 2021 correspondence indicates that it was part of a broader update responding to Stalnakers' Demand to Perform letter sent on December 16, 2021. *See* (Doc. 17 at 6.) 5Fold's statements relating to third-party financing appear to be a part of ongoing negotiations about the issue of lien priority, rather than an unequivocal statement of 5Fold's refusal to perform. The December 23, 2021 correspondence fails to establish a clear repudiation of the Buy-Sell Agreement, and, therefore, 5Fold did not anticipatorily breach the agreement. *Eschenbacher v. Anderson*, 34 P.3d 87, 93 (Mont. 2001).

### b. Whether 5Fold's failure to tender funds on December 31, 2021, constituted a material breach of contract.

Stalnakers argue that, even if the December 23, 2021 letter did not rise to the level of an anticipatory breach, 5Fold's actual failure to tender funds on the contractual closing date—December 31, 2021—constituted a material breach of contract. (Doc. 13 at 11.) A material breach touches the fundamental purpose of

the contract and defeats the object of the parties in making the contract. *R.C. Hobbs Enterprises, LLC v. J.G.L Distributing, Inc.*, 104 P.3d 503, 508 (Mont. 2004). 5Fold acknowledges that the failure to tender funds ordinarily would constitute a breach. (Doc. 16 at 14.) 5Fold nonetheless argues that no breach occurred because Stalnakers' actions prevented 5Fold from being able to complete the sale by the closing date. (*Id.*) A party cannot prevent performance of a contract and then avail oneself of its nonperformance. *Smith v. Farmers Union Mut. Ins. Co.*, 260 P.3d 163, 174 (Mont. 2011).

    5Fold argues that Stalnakers prevented performance and acted in bad faith in two circumstances. 5Fold alleges first that Stalnakers' refusal to subordinate their seller financing prevented performance. (Doc. 16 at 14.) 5Fold contends that later, after the lien priority issue had been resolved, Stalnakers unreasonably failed to extend the closing date. (*Id.*) 5Fold alleges that Stalnakers' conduct rose to the level of a breach of the implied covenant of good faith and fair dealing. (*Id.* at 15.)

    5Fold suggests that the Stalnakers' "refusal to negotiate financing terms" caused 5Fold's inability to gather funds in time for the December 31, 2021, closing date. (*Id.* at 13.) 5Fold's argument fails on two fronts. 5Fold fails to provide support for its contention that Stalnakers refused to negotiate on the funding terms and that this refusal caused a delay. Stalnakers raised the issue of lien priority by October 22, 2021. (Doc. 25 at 6.) The record's next mention of lien priority comes

9

in December in Stalnakers' Demand to Perform Letter where Stalnakers mention that they rejected 5Fold's lien priority proposal. (Doc. 14-7.) 5Fold's renewed demand on December 23, 2021, that Stalnakers subordinate their financing arrived only eight days before the December closing date. (Doc. 17 at 7.) Both parties seemed firmly entrenched in their positions at the time of the December 23, 2021 correspondence. Neither party seems to have attempted to negotiate a compromise until after that date. 5Fold's argument that Stalnakers caused some sort of delay on this short timeline lacks merit.

    Second, the length of negotiations proves irrelevant in light of the fact that Stalnakers eventually agreed to subordinate their financing up to $500,000 on December 30, 2021. This agreement demonstrates Stalnakers' willingness to negotiate. (Doc. 25 at 6-7.) The mutually agreed resolution of the lien priority issue renders moot the question of whether Stalnakers' refusal to subordinate their financing otherwise would have constituted a breach of the implied covenant of good faith and fair dealing. In 5Fold's own words "all the negotiations between the parties leading up to that point provide context but are largely irrelevant." (Doc. 16 at 13.)

    The only basis for 5Fold's breach of the implied covenant of good faith and fair dealing must stem from Stalnakers' refusal to extend the closing deadline. The explicit terms of the Buy-Sell Agreement undermine 5Fold's argument. 5Fold

agreed to pay $2,000,00 at closing on December 31, 2021, per the terms of the Buy-Sell Agreement. (Doc. 14-2 at 1.) The Buy-Sell Agreement further provides that "the Closing Date may be extended without amendment by not more than 0 days to accommodate delays attributable solely to such third party financing." (*Id.* at 2.) This provision originally left the number of days blank. 5Fold filled in the "0" when drafting the contract. (Doc. 25 at 5.)

     5Fold argues that Stalnakers deviated from prevailing commercial standards of reasonableness in refusing to extend the closing deadline after agreeing to subordinate their financing "in light of in the middle of the holiday season, on New Year's Eve when most financial institutions are closed." (Doc. 16 at 16.) The justified expectations of a party may not contradict or exceed the express terms of the contract. A breach of the implied covenant of good faith does not require or depend, however, on the breach of an express contract term. *House v. U.S. Bank Nat'l Ass'n*, 481 P.3d 820, 831 (Mont. 2021). Proof of an alleged breach of the implied covenant of good faith and fair dealing requires proof that the offending party acted under the contract terms in a manner that was a dishonest or unreasonable deviation from prevailing commercial standards of reasonableness in the trade, thereby denying the non-breaching party the benefit of the bargain. *Id.* at 831.

5Fold's argument that Stalnakers acted outside the scope of commercial standards of reasonableness presumes that 5Fold's expectations do not contradict or exceed the express terms of the contract. "The covenant of good faith cannot be read to prohibit a party from doing that which the agreement expressly permits." *Hardy v. Vision Serv. Plan*, 120 P.3d 402, 405 (Mont. 2005). The Buy-Sell Agreement explicitly set forth December 31, 2021 as the date for closing. *See* (Doc. 14-2.) 5Fold knew when it drafted the Buy-Sell that it had chosen a bank holiday for closing and regardless chose to disallow extensions of the closing date "to accommodate delays attributable to third party financing." (*Id.* at 2.) The Court declines to reach the issue of commercial reasonability when Stalnakers acted within the express right afforded to them under the terms of the Buy-Sell Agreement. *House*, 481 P.3d at 831.

Stalnakers exercised the express right granted to them under the provisions of the Buy-Sell Agreement to decline to amend the closing date due to 5Fold's difficulties in obtaining third party financing. The Buy-Sell Agreement required 5Fold to tender $2,000,000 by December 31, 2021. The Buy-Sell Agreement provided that the closing date could be extended by "not more than 0 days" to accommodate delays related to third party financing. (Doc. 14-2 at 2.) 5Fold's failure to have its financing in order by the date of the closing constitutes a breach of contract.

## II. Whether 5Fold breached the Buy-Sell Agreement under Stalnakers' alternative theories of breach.

The Court determines that 5Fold materially breached the terms of the Buy-Sell Agreement by failing to tender funds at closing on December 31, 2021. This breach proves sufficient to grant Stalnakers summary judgment on their breach of contract claim, and, therefore, the Court need not address the Stalnakers other two bases for breach of contract.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. 13) on Count 1—Breach of Contract is **GRANTED.**

Dated this 7th day of June, 2022.

_____
Brian Morris, Chief District Judge
United States District Court